# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**BILLY TENNYSON**                                                                                                            **PLAINTIFF**

**v.**                                                                                                                                            **No. 1:17CV81-RP**

**STATE ALCORN COUNTY**
**JUDGE POUNDS (CIRCUIT COURT JUDGE)**
**NED CREGAN (PROBATION OFFICER)**                                   **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Billy Tennyson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. The plaintiff has consented to magistrate jurisdiction under 18 U.S.C. § 636(c); as such, the undersigned Magistrate Judge has jurisdiction to enter the instant memorandum opinion and accompanying final judgment. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that his current incarceration is illegal and that the defendants denied him adequate medical care. For the reasons set forth below, the plaintiff's claim of illegal incarceration will be dismissed without prejudice for failure to state a valid claim under 42 U.S.C. § 1983. In addition, because the plaintiff's allegations against the defendants named in the present suit involve only his claim of illegal incarceration, they will be dismissed with prejudice from this case. Further, defendant Judge Pounds enjoys absolute immunity from civil suit regarding his actions undertaken as a judge. Finally, Mr. Tennyson has not alleged that defendant Alcorn County had a policy that led to

the alleged denial of adequate medical care; as such, he has not stated a valid claim for § 1983 relief against the county.

Mr. Tennyson has, potentially, stated a valid § 1983 claim for denial of adequate medical care; however, none of the defendants he has named in this suit were involved in his medical care. Hence, the plaintiff has 30 days to identify one or more defendants who allegedly failed to provide him adequate medical care. If he cannot do so, then this case must be dismissed. Finally, Mr. Tennyson testified at his *Spears* hearing that he had a ruptured hernia requiring surgical repair – and that doctors had told him that his right testicle must be removed because it has a hard growth on it. Thus, Mr. Tennyson must report to the court, within 30 days, whether his hernia and testicle have been treated – and what treatment he has received for these medical issues.

**Factual Allegations**

Mr. Tennyson is currently incarcerated after his conviction in Alcorn County for vehicle theft. After his release on parole, he was arrested for violating the terms of parole. He alleges that his parole had expired at the time of his arrest and, thus, he could not have violated the terms of that parole. He also complains that he should be released onto house arrest or probation so that he can have surgery to remove his one remaining testicle and epididymis – and undergo hernia repair surgery. Mr. Tennyson had previously been scheduled for surgery a week after his parole revocation hearing, but, at the time of his *Spears* hearing, the surgery had not taken place.

Free world doctors had diagnosed Mr. Tennyson with cancer of the left testicle, and he underwent a procedure to remove both the testicle and its epididymis. Doctors told him at the time that he should also have his right testicle removed, but he initially declined. He changed his mind and had been approved to have his right testicle removed. He was trying to work out transportation to and from surgery, but his parole was revoked and he was taken into custody before that could happen. He

was arrested for a parole violation on March 22, 2017, and he was transported to attend a revocation hearing on March 24, 2017. He had also developed a hernia in his groin and had been scheduled for a hernia repair before his revocation. Once incarcerated, he received a hernia belt as treatment, rather than surgical repair. Medical personnel told him that the hernia belt would be sufficient until next parole hearing in March 2018. Mr. Tennyson would like to undergo procedures to repair the hernia and to remove his right testicle, and he believes that the decision by jail or prison personnel to delay the procedures constitutes a denial of adequate medical care.

### *Heck*

In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the Supreme Court clarified the relationship between actions under 42 U.S.C. § 1983 and *habeas corpus* proceedings. A § 1983 claim that calls into question the lawfulness of conviction or confinement or otherwise demonstrates the invalidity of the conviction or confinement is not cognizable under § 1983 until such time as a § 1983 plaintiff is able to

> prove that the conviction or sentence has been *reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 114 S. Ct. at 2372; *see also Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994). Only if the court finds that the plaintiff's § 1983 suit, even if successful, "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," should the § 1983 action be allowed to proceed. *See Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995). In addition, *habeas corpus* petitions are the "exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within

the literal terms of § 1983." *Heck*, 512 U.S. at 481; *see also Edge v. Stalder*, 240 F.3d 1074 (5th Cir. 2000).

In the present case, Mr. Tennyson argues that he could not have violated the terms of his parole because it had expired – and he should thus be released. Should he prevail on this direct challenge to his incarceration, he would necessarily draw into question the validity of his conviction or sentence. Therefore, Mr. Tennyson must "demonstrate that the conviction or sentence has already been invalidated," *Heck*, 114 S. Ct. at 2372, in order for the § 1983 cause of action to accrue. He has made no such showing; as such, this allegation must be dismissed for failure to state a claim upon which § 1983 relief could be granted, but without prejudice to his ability to seek federal *habeas corpus* relief under 28 U.S.C. § 2254.

## Judge Pounds Enjoys Judicial Immunity

Under the facts of the instant case, Judge Pounds enjoys absolute immunity from suit, as all of the plaintiff's allegations against him involve acts that were judicial in nature. In *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993), Sindram, a very frequent filer in the Courts of the District of Columbia sued in the United District Court seeking compensatory and punitive damages from two judges and several clerks of the D.C. Superior Court. In dismissing the complaint, the lower court relied on the doctrine of absolute judicial immunity. The Appellate Court affirmed the dismissal of Sindram's action, imposing sanctions for falsifying affidavits in support of *in forma pauperis* petitions and prohibiting Sindram from filing any new civil actions *pro se* before paying the sanctions, holding that these actions were well within the judges' judicial capacity and jurisdiction.

Courts must construe a judge's jurisdiction broadly where the issue is the immunity of the judge. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990).

In *Forrester v. White*, 484 U.S. 219 (1988) the court held:

> As a class, judges have long enjoyed a comparatively sweeping form of immunity, though one not perfectly well defined. Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error. See Block, *Stump v. Sparkman* and the History of Judicial Immunity, 1980 Duke L. J. 879. More recently, this Court found that judicial immunity was "the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872). Besides protecting the finality of judgments or discouraging inappropriate collateral attacks, the *Bradley* Court concluded, judicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants. *Id.*, at 348.
>
> If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits, *Id.*, at 660-661. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Id.*, at 226-227.

In *Mireles v. Waco*, 502 U.S. 9 (1991), the Supreme Court stated:

> A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. See, *e.g.*, *Forrester v. White*, 484 U.S. 219 (1988); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Court of Va. V. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Butz v. Economou*, 438 U.S. 478 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872).

*Id.* at 9-10.

The Court also held:

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S., at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). See also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity).
>
> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227-229; *Stump v. Sparkman*, 435 U.S., at 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357; *Bradley v. Fisher*, 13 Wall., at 351.

*Id.* at 11-12.

The Court further held:

> But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.*, at 356. See also *Forrester v. White*, 484 U.S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in *Stump* indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S., at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, . . . .

*Id.* at 12-13.

In *Dellenbach v. Letsinger*, 889 F.2d 755 (7th Cir. 1989), *cert. denied*, 494 U.S. 1085 (1990), with respect to jurisdiction over the subject matter, the court, held:

> The control of a docket is a key function to the proper workings of a court, and although Mr. Dellenback boldly states - without a citation of authority - that Chief Judge Buchanan's status as Chief Judge did not give him authority to act "without some specific designation of jurisdiction," Appellant's Br. at 13, that proposition is not at all self-evident. Again if the judge erred in his belief that he had authority to delay the appeal, his error was at most, a "grave procedural error" - not an act undertaken in "the clear absence of all jurisdiction."

*Id.* at 761.

With respect to judicial capacity, the Seventh Circuit noted the approach in *Stump* in analyzing the issue of whether the act is a judicial act:

> "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.* whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 110.

…

> The Court also noted that the Supreme Court had noted that "[c]ourts and judges often act *ex parte*" 435 U.S. 363 N.12, 98 S.Ct. at 1108 N.2. Furthermore, the Court specifically stated, as recently as its opinion in *Forester* that "the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." 484 U.S. at 227, 108 S.Ct. at 544.

*Id.* at 761-762.

The Supreme Court in *Forrester v. White, supra*, held that absolute judicial immunity also be rests on the ground that:

> Suits against federal judges [are not] the only available means through which litigants can protect themselves from the consequence of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

*Forrester*, 484 U.S. 219 (1988). For these reasons, Judge Pounds will be dismissed with prejudice from this suit under the doctrine of absolute judicial immunity.

### County Liability

To establish municipal or county liability under § 1983, a plaintiff must demonstrate that an official policy or custom caused the constitutional violation alleged. *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993). The plaintiff has alleged no facts to indicate that any policy-making officials for Alcorn County implemented an official policy that caused his alleged constitutional violation, nor has he alleged a

persistent pattern of conduct by city or county officials that caused the alleged constitutional violation. In a § 1983 action, liability may not be imposed upon a governmental entity on a theory of *respondeat superior* for the actions of non-policy making government employees. *Monell*, 436 U.S. at 690-94; *see Doe v. Rains County Independent School District*, 66 F.3d 1402, 1409 (5th Cir. 1995); *Brown v. Bryan County, Texas*, 53 F.3d 1410, 1418 (5th Cir. 1995). Because the plaintiff alleges no facts showing the direct involvement of policy-making officials of the county in the alleged violation of his constitutional rights, Alcorn County must be dismissed from this case for failure to state a claim upon which relief could be granted.

### No Defendants Remain as to Medical Care Claims, and the Court Requires an Update on the Plaintiff's Medical Care

As set forth above, none of the named defendants in this case participated in Mr. Tennyson's claims for denial of adequate medical care. As that is the sole remaining claim in this case, Mr. Tennyson must, within 30 days of the date of this order, name at least one defendant who allegedly caused the denial of medical care described in his complaint. If he cannot do so, then the case must be dismissed. Finally, Mr. Tennyson must provide the court with an update as to the medical care he has received after the *Spears* hearing regarding his hernia and his remaining testicle.

### Conclusion

For the reasons set forth above, all defendants are dismissed with prejudice from this case, as none of them participated in the alleged denial of medical care as to Mr. Tennyson. In addition, to the extent that Mr. Tennyson challenges his continued confinement, those claims must be dismissed because they are not proper in a case proceeding under 42 U.S.C. § 1983. Further, as Mr. Tennyson has not alleged that Alcorn County had a policy or custom of denying medical care to inmates, the county should be dismissed for that reason, as well. Though it appears that Mr. Tennyson's claims

regarding denial of medical care could proceed, he has not named any defendants who participated in the provision of his medical care. For that reason, within 30 days, he must name at least one defendant who allegedly denied him adequate medical care regarding treatment for a hernia and testicular cancer. Finally, within 30 days, Mr. Tennyson must provide the court with an update regarding the care he received, after his *Spears* hearing, regarding his hernia, as well as his remaining testicle and epididymis.

**SO ORDERED**, this, the 19th day of July, 2018.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE